IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| BRETT A. TURNQUIST,<br><br>Plaintiff,<br><br>vs.<br><br>C/O MRS. RANEY and C/O MR. BYRON,<br><br>Defendants. | CV 13-87-BLG-CSO<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Brett Turnquist ("Turnquist") claims his constitutional rights were violated when Defendants failed to respond to his complaints of sexual assault by other inmates while he was incarcerated at the Dawson County Correctional Facility in Glendive, Montana. *See Amended Complaint (ECF 7).*[1] Defendants filed a Motion for Summary Judgment arguing that Turnquist failed to exhaust his prison grievance remedies. *See Motion for Summary Judgment (ECF*

---

[1]"ECF" refers to the document as numbered in the Court's 1 Electronic Case Files. *See The Bluebook, A Uniform System of Citation,* § 10.8.3.

1

*18)*. Turnquist opposed the motion arguing that he was not aware of the grievance procedure (*Statement of Disputed Facts, ECF 29*) and he was not given the option of exhausting his administrative remedies because when he submitted a "kite" he got no response. *MSJ Response (ECF 23)*.

Having reviewed the parties initial filings on the Motion for Summary Judgment, the Court gave Turnquist an opportunity to file a Statement of Disputed Facts, to respond to the new evidence presented in Warden Green's Supplemental Affidavit (*ECF 25*), and to make any further response he wanted to make to Defendants' Motion for Summary Judgment. *April 15, 2015 Order (ECF 28) at 5*. Turnquist filed a response to the Court's Order on May 11, 2015 (*ECF 29*) and Defendants filed a supplemental reply on May 22, 2015. *ECF 30*. This matter has now been fully briefed.

Having considered the parties' arguments and submissions, the Court finds that Defendants have met their burden of demonstrating that administrative remedies were available and that Turnquist failed to utilize those remedies. Defendants' Motion for Summary Judgment (*ECF 18*) will be granted.

I.  **BACKGROUND**

Turnquist was incarcerated at the Dawson County Correctional Facility (DCCF) in July and August, 2012.  *See Defendants' Statement of Uncontroverted Facts ("SUF") (ECF 21) at ¶ 2 citing Green Affidavit (ECF 20) at ¶ 3*.  Turnquist alleges that, beginning on July 9, 2012, he was assaulted repeatedly by three inmates.  He reported this wrongdoing to prison officials but alleges his claims were disregarded as frivolous and without merit.  He alleges that the assaults then became a daily occurrence.  *See Complaint (ECF 2) at 7*.  On August 6, 2012, Turnquist spoke to a nurse during a medical pass and mentioned his allegations of inmate assault.  *See SUF (ECF 21) at ¶ 10 [sic--second ¶10] citing Green Affidavit (ECF 20) ¶ 13*.

Turnquist's allegations were discussed at a staff meeting the following day, Turnquist was moved to another area in the Facility, and the matter was investigated.  *See SUF (ECF 21) at ¶ 11 [sic--second 11] citing Green Affidavit (ECF 20) ¶ 14*.  Turnquist alleges that Officer Bryon placed him in a holding cell on August 7, 2012, and required him to strip so that photos could be taken of the bruises and contusions on his legs and arms.  Turnquist remained in the holding cell until August

3

17, 2012, when he was moved to the "C" housing unit on the County side of the facility. *See Complaint (ECF 2) at 7.*

On August 21, 2012, Office Riley moved Turnquist to an isolation cell meant for punitive punishment, which was devoid of human contact or communication. He was only allowed one phone call to his mother. His library, television, gym, letter writing, and church and bible study privileges were taken away. *See Complaint (ECF 2) at 7; Amended Complaint (ECF 7) at 4-5.*

Turnquist remained at DCCF while the matter was investigated and it was determined that no charges would be brought against the alleged assailants. Turnquist was transferred to the Montana State Prison on August 26, 2012. *See SUF (ECF 21) at ¶ 12 citing Green Affidavit (ECF 20) at ¶ 15; Complaint (ECF 2) at 7; Amended Complaint (ECF 7) at 4-5.*

## II. **PARTIES' ARGUMENTS**

Defendants argue there is a grievance procedure at DCCF, Turnquist did not submit a grievance regarding the issues raised in his Complaints, and therefore he failed to exhaust his administrative remedies. *See Motion for Summary Judgment Brief, ECF 19.*

Turnquist initially submitted a brief document (a little more than a page) entitled "Motion of Argument of the facts on the Plaintiffs side" which the Court liberally construed as Turnquist's response to Defendants' Motion for Summary Judgment. *Response (ECF 23)*. In that document, Turnquist alleged he submitted a kite to prison officials, was told they would get back to him, and he never received a response. *Id.*

In his response to Defendants' Statement of Undisputed Facts (*ECF 29*), Turnquist argues that he did not submit a grievance because he was not aware of the procedure of a grievance nor was he aware it was even available at the time. He alleges he asked for help before and while he was in an isolation cell but it was not given and his kites/OSR's were not answered. He contends that he should not have to file a grievance when he is the victim and that this is a PREA case. He alleges he was not aware of the procedure of PREA or how to report it. *Response to Undisputed Fact (ECF 29) at 1*. He alleges he was the victim but was punished by being placed in an isolation cell from August 7, 2012, to August 26, 2012, without an opportunity to go to the library, write letters, go to the gym, phone his family, watch television

or socialize with other inmates. *Id.*

### III. <u>SUMMARY JUDGMENT STANDARD</u>

The Court shall grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The party moving for summary judgment has the initial burden of showing there is no genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If the moving party makes a prima facie showing that summary judgment is appropriate, the burden shifts to the opposing party to show the existence of a genuine issue of material fact. *Id.* On summary judgment, all inferences must be drawn in the light most favorable to the party opposing summary judgment. *Id.* at 159.

A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Ninth Circuit in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc), recently held that the proper procedural device for

determining whether administrative remedies have been exhausted is a motion for summary judgment. *Id.* at 1168. The appropriate means of determining whether a defendant has proved a failure to exhaust is governed by the following burden-shifting regime:

> a defendant must first prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy. Then, the burden shifts to the plaintiff, who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile. The ultimate burden of proof, however, remains with the defendants.

*Williams v. Paramo*, 775 F.3d 1182, 1190-1191 (9th Cir. 2015) (internal quotations and citations omitted).

By contemporaneous notice provided on December 24, 2014 (*ECF 22*), Turnquist was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998)(en banc ); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

## IV.  **DISCUSSION**

The Prison Litigation Reform Act ("PLRA")'s exhaustion

requirement states:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). This means a prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Exhaustion is mandatory. *Booth,* 532 U.S. at 741; *Jones v. Bock*, 549 U.S. 199, 211 (2007). Under the PLRA, prison regulations define the exhaustion requirements. *Jones,* 549 U.S. at 218.

Failure to exhaust is "an affirmative defense the defendant must plead and prove." *Jones*, 549 U.S. at 204. "[T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino*, 747 F.3d at 1172. Therefore, the defendant must produce evidence showing that a remedy is available "as a practical matter," that is, it must be "capable of use; at hand." *Albino*, 747 F.3d at 1171. The Court should

consider what "information [was] provided to the prisoner concerning the operation of the grievance procedure." *Brown*, 422 F.3d at 937. This information "is pertinent because it informs [the] determination of whether relief was, as a practical matter, 'available.'" *Id.*

Defendants have presented evidence that Procedure No. DCCF 3.3.3, the "Inmate Grievance Program," was in effect in 2012 and that this procedure set forth the internal grievance mechanism to address inmate complaints regarding "grievable issues" at DCCF. *See SUF (ECF 21) at ¶ 8 citing Green Affidavit (ECF 20) at 9.* Under this procedure an inmate was required to submit an Inmate/Offender Informal Resolution Form (informal grievance) to his unit manager within five working days of the action or omission which caused the complaint in order to initiate the grievance procedure. *See DCCF Grievance Procedure ¶ III(E) (ECF 20-1) at 2.* If the matter was not resolved to the inmate's satisfaction, the inmate could then file an Inmate/Offender Grievance Form (formal grievance) within five working days from the date he received the response to his informal grievance. If the inmate did not receive a response to his informal grievance within 25 working days, he could file a formal grievance within the next five

9

working days. *See DCCF Grievance Procedure ¶ III(E)(4) (ECF 20-1) at 3.* If the inmate was dissatisfied with the result of the formal grievance, he could appeal the grievance to the warden within five working days of the formal grievance decision. *See DCCF Grievance Procedure ¶ III(I)(1)(a) (ECF 20-1) at 4.* If the inmate was dissatisfied with the result of the appeal to the warden, he could file an appeal to the Director of the Department of Corrections within five working days of the warden's decision. *See DCCF Grievance Procedure ¶ III(I)(1)(c) (ECF 20-1) at 5.*

Warden Green testified in his Supplemental Affidavit that all inmates, including Turnquist, are required to participate in an orientation process upon admission to the Dawson County Corrections Facility. This orientation includes advising the inmate about the location, application, and use of the grievance policy and procedure, including the forms relating thereto. *Green Supp. Affidavit (ECF 25) at ¶ at 2, ¶ 6.* In addition to orientation, Procedure No. DCCF 3.3.3 was posted on bulletin boards in the inmate housing units, including the units where Turnquist was housed, as well as the inmate library. The related forms were available from staff or the inmate housing unit

representative. *Green Supp. Affidavit (ECF 25) at 3, ¶ 8.*

Based upon this testimony, it is clear that Defendants have met their burden of proving that there was an available administrative remedy and that Turnquist was made aware of this process. Although Turnquist argues in his supplemental response that he was not aware of the grievance procedure (*Statement of Disputed Facts, ECF 29*), he contradicts that statement by indicating that he filed a kite (presumably a grievance). *See Complaint (ECF 2) at 4.* Moreover, the Court specifically gave Turnquist an opportunity to respond to the evidence presented in Warden Green's Supplemental Affidavit. *See April 15, 2015 Order (ECF 28).* Although he responded to the Court's Order, Turnquist did not dispute Warden Green's testimony that inmates are required to participate in an orientation process which discusses the use of the grievance policy or that the grievance policy was posted in the housing units where Turnquist was housed. *See Green Supp. Affidavit (ECF 25) at 3, ¶¶ 6, 8.* Accordingly, the Court finds that Defendants have met their burden of proving that there was an available administrative remedy and that Turnquist was made aware of this process.

Defendants have also met their burden to demonstrate that Turnquist did not exhaust that available remedy. The Court specifically instructed Turnquist that he had to clarify whether he actually filed a grievance and if he did he must indicate to the Court, "to whom it was submitted, what it said and when it was submitted." *April 15, 2015 Order (ECF 28) at 4*. In fact, the Court emphasized that, "[t]his information is important to the Court's analysis." *Id.*

In response to the Court's Order, Turnquist admitted that he did not submit a grievance. *Response to Order (ECF 29) at 1*. Although elsewhere in the record he contends he filed a kite, in response to the Court's Order, he provided no information regarding to whom it was submitted, what was said in that kite, or when it was submitted. *See Response to Order (ECF 29)*.

Turnquist argued in his response to the Court's Order that he should not have had to file a grievance because this is a PREA case. Presumably Turnquist is referring to the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601, et seq. The PREA establishes a zero-tolerance standard for the incidence of sexual assault in prisons in the United States. *Id.* at § 15602 (1). But PREA does not mandate any

12

particular administrative remedy. *See Woodford v. Ngo*, 548 U.S. 81, 118 (Stevens, J., dissenting) (stating tacitly that the PREA does not supersede state administrative remedies in discussing the potentially harsh consequences of the PLRA's exhaustion requirement under state prison grievance systems). PREA does not exempt Turnquist from the PLRA's mandatory exhaustion requirement.

Defendants have met their burden of demonstrating that there was an available administrative remedy at the Dawson County Detention Facility and that Turnquist did not exhaust that available remedy. In contrast, Turnquist has not shown that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him. *See Williams*, 775 F.3d at 1190-1191.

Based upon the foregoing, the Court issues the following:

## ORDER

1. Defendants' Motion for Summary Judgment (*ECF 18*) is GRANTED.

2. The Clerk of Court is directed to close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

3. The Clerk of Court is directed to have the docket reflect that the Court certifies pursuant to Fed.R.App.P. 24(a)(3)(A) that any appeal of this decision would not be taken in good faith.

DATED this 27th day of July, 2015.

/s/ *Carolyn S. Ostby*  
United States Magistrate Judge